**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Billy Meister, | No. CV-24-02943-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Fling Enterprise Prevost LLC, *et al.*, | |
| Defendants. | |

At issue is Defendants Michael Fling and Leslie Fling's Motion to Dismiss (Doc. 19, MTD), to which Plaintiff Billy Meister filed a Response (Doc. 23, Response) and Defendants filed a Reply (Doc. 28, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.      Procedural Background**

This case involves three defendants: Michael Fling, Leslie Fling, and Fling Enterprise Prevost LLC. The Court refers to the two individual defendants as "the Flings," and it refers to the entity defendant as "FEP."

Plaintiff initiated this case in federal court on October 28, 2024. (*See* Doc. 1.) Soon thereafter, the Flings moved the Court to dismiss the claims against them. (*See* Doc. 9.) Plaintiff then (1) responded to that motion and (2) filed a First Amended Complaint on the same day. (*See* Doc. 11, FAC; Doc. 12.) Bizarrely, Plaintiff's responsive memorandum did not even attempt to preserve the original complaint and instead resisted dismissal on the basis of allegations made in the FAC. That approach is anomalous because, by filing an

amended pleading, Plaintiff mooted the very motion that he used the amended pleading to oppose. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (holding that the filing of an amended pleading generally moots a motion to dismiss the original pleading). Recognizing the insignificance of the original complaint and motion to dismiss, the Flings declined to file a substantive reply and instead filed the motion currently at issue, which is a new motion to dismiss the claims against the Flings in the FAC. (*See* Doc. 16.)

To confuse matters further, Plaintiff then engaged in another iteration of the exact same conduct described above. One day after moving for leave to file a Second Amended Complaint, (*see* Doc. 22-1, SAC), Plaintiff filed his response brief to the currently pending motion to dismiss the FAC. As before, his responsive memorandum is predicated on allegations made in the SAC, not the FAC, despite the latter being the object of the motion to dismiss. (*See* Response at 3.) The Flings are understandably annoyed. In their reply brief, they note that Plaintiff declined to amend both his original complaint and his FAC after meeting and conferring with the Flings regarding both of their motions to dismiss. Plaintiff then filed amendments to both pleadings *after* the Flings filed motions to dismiss, thus rendering both the meet-and-confer process and the motions superfluous. The Flings argue that Plaintiff's conduct indicates that he likely did not even read the motions to dismiss and therefore participated in the two meet-and-confer conferences in an unserious manner. (*See* Reply at 2 ("Plaintiff has now refused to amend twice before forcing Defendants to file a motion, then amended upon reading the motion."); Reply at 3 ("Plaintiff is forcing Defendants to file multiple motions to dismiss and does not even bother to respond to them.").)

The Flings chose not to oppose Plaintiff's motion for leave to file the SAC and instead expressly consented to it, (*see* Doc. 27), but the Flings now seek to use that pleading as a sword against itself. The Flings argue that, by referring in his Response to the SAC instead of the FAC, Plaintiff has waived all arguments relating to the allegations contained in the FAC. Although the Flings are correct that a court may deem an argument conceded

1  where a party fails to oppose it, the Court concludes that waiver would be inappropriate
2  here. Contrary to the Flings' assertion, Plaintiff *does* oppose the pending motion to dismiss.
3  He simply does so in a procedurally questionable manner, by citing to the SAC rather than
4  the FAC. However, the allegations in the SAC are substantially similar to those in the FAC,
5  so Plaintiff's citations to the former do not render his objection to the pending motion
6  substantively deficient. Therefore, the Court will not deem Plaintiff as having conceded
7  the issues raised in the instant motion. To the extent that Plaintiff's conduct is sanctionable,
8  a constructive concession of a core claim would be too extreme a penalty, particularly given
9  that the Flings played a role in bringing about the current procedural posture by acquiescing
10 to the filing of the SAC.[1]

11 As noted above, the filing of an amended pleading generally moots the preceding
12 pleading and all pending motions related thereto. "However, a court may decline to deny
13 as moot a motion to dismiss filed prior to an amended complaint when the amended
14 complaint suffers from the same deficiencies as the original complaint. Additionally, when
15 the amended complaint is substantially identical to the original complaint, the amended
16 complaint will not moot a pending motion to dismiss." *Skistimas v. Hotworx Franchising*
17 *LLC*, No. 3:23-CV-05974-DGE, 2024 WL 3401023, at *1 (W.D. Wash. July 12, 2024)
18 (internal quotation marks, citations, and alterations omitted). Here, the FAC and the SAC
19 are substantially identical insofar as they relate to the Flings' alleged alter-ego liability,
20 which is the subject of the Flings' pending motion to dismiss. The SAC adds six new
21 sentences, all contained within a single new subsection, but none of these sentences pertain
22 to alter-ego liability. Instead, they assert that the Flings are subject to an additional form of
23 personal liability, namely direct liability for participating in FEP's alleged torts in their
24 capacities as *directors*, not as members. These two forms of liability are distinct, as is clear
25 from the case cited by Plaintiff in the SAC. *See Jabczenski v. S. Pac. Mem'l Hosps.*, 119
26 Ariz. 15, 20–21 (Ct. App. 1978). Alter-ego liability is a form of vicarious liability, whereas

---

[1] Nevertheless, the Court warns Plaintiff's counsel that future instances of procedural gamesmanship will be punishable by sanctions, whether on motion or *sua sponte*.

director liability is a form of direct liability for one's participation in corporate wrongs. Therefore, the amendment giving rise to the SAC has no bearing on the Flings' pending motion to dismiss Plaintiff's alter-ego claim. Accordingly, the motion is not moot.

The Court will adjudicate the Flings' motion as normal. Irrespective of whether the Court grants or denies it, the Flings may file a third motion to dismiss directed at the SAC's assertion of direct personal liability borne by the Flings.

## II. Substantive Background

The FAC alleges as follows. In a transaction spanning late 2023 and early 2024, FEP entered into a consignment agreement with Premium Coach Group LLC (PCG), an RV dealer licensed in Arizona. According to that agreement, PCG received physical possession of a 2002 Prevost Marathon XLII RV (the RV) that FEP owned. PCG was responsible for advertising and selling the RV, but FEP continued to hold title. Plaintiff, a Texas resident, traveled to Arizona and purchased the RV from PCG for $325,000. Plaintiff took physical possession of the RV, procured a temporary permit, drove the RV back to Texas, and made arrangements with PCG to receive formal title. Plaintiff did not know that the RV was on consignment from FEP, and he purchased the RV in good faith and without knowledge that any other person or entity claimed rights therein.

PCG never remitted any of the purchase money to FEP, and FEP therefore did not permit PCG to transfer title to Plaintiff. PCG eventually went out of business after its owner became embroiled in a "personal BK" in Maricopa County Superior Court. Although the nuances of that proceeding are not clear from the face of the pleadings, it is clear that PCG's owner misled both Plaintiff and FEP.

Plaintiff eventually learned that FEP held title to the RV. He contacted FEP's attorney and requested a transfer of title, but FEP's attorney refused to comply. Counsel justified that refusal with a citation to a Superior Court order in an unrelated case that had been reversed by a memorandum decision issued by the Arizona Court of Appeals. After providing a copy of the appellate court's decision, Plaintiff "repeatedly urged FEP to transfer the title and avoid legal expenses" and "repeatedly pointed out that while both of

them are victims of [PCG's owner's] bad conduct, [Plaintiff's] interest in the RV clearly was superior to that of FEP." (FAC ¶¶ 48–49.) "FEP nevertheless refused." (FAC ¶ 51.) Plaintiff contends that he is the owner of the RV under Arizona law.

The Flings are the sole members of FEP. (FAC ¶ 78.) Despite residing in Oklahoma, the Flings formed FEP under the laws of Montana, ostensibly for the purpose of availing themselves of the lower sales tax and registration fees incurred under Montana law. Although Plaintiff construes that tax-evasion strategy as "fraudulent" and "illegal" under Oklahoma law, Plaintiff also cites to third-party marketing literature describing the formation of a Montana LLC as a "legal" means of reducing one's exposure to sales tax and registration fees. (FAC ¶¶ 63–77.)

The crux of the instant motion concerns Plaintiff's contention that FEP is the mere "alter ego" and "instrumentality" of the Flings. Plaintiff supports that assertion by alleging that the Flings funded FEP with their personal assets, that FEP's sole asset was the RV, that the Flings paid for the operational expenses of the RV with their personal assets, and that the Flings used the RV for their personal purposes. (FAC ¶¶ 78–85.) Plaintiff highlights the fact that Mike Fling signed the consignment agreement with PCG in his personal capacity and that the Flings initially asserted in a separate lawsuit against PCG that they owned the RV in their personal capacities. (FAC ¶¶ 86–88.) Thus, according to Plaintiff, FEP is simply the business conduit of the Flings. Moreover, Plaintiff contends that FEP is a "shell entity that will be immune from any collection of potential judgment against it because it is underfunded." (FAC ¶¶ 89–98.) In support of that allegation, Plaintiff points to a statement by FEP's attorney that Plaintiff would likely be unable to collect anything from FEP beyond mere transfer of title. (FAC ¶¶ 99–100.) Plaintiff's only claim is against FEP for conversion, but he alleges that the Flings ought to be personally liable for any judgment procured against FEP. (*See* FAC ¶¶ 101–03.) The Flings argue in their motion to dismiss that the FAC's alter-ego allegations fail as a matter of law.

. . .

. . .

- 5 -

### III. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### IV. Discussion

The sole issue before the Court is whether the FAC establishes a *prima facie* case of alter-ego liability. However, it is not immediately obvious which body of law governs

that inquiry. Although the parties cite caselaw indicating that, under the *Erie* doctrine, federal courts ought to apply the same substantive law to disputes involving corporate veil-piercing that the forum state would apply, (*see* MTD at 2–3), neither party stopped to consider *which* body of substantive law an Arizona court would apply to the instant dispute. Both parties simply assume that an Arizona court would resolve the pending matter according to Arizona substantive law. The *Erie* doctrine is not so simple.

"According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022). In this case, a Texas citizen is suing two Oklahoma citizens and a Montana LLC on a conversion claim related to the sale of an RV in Arizona involving an LLC consignee holding an Arizona license to deal RVs. So, what choice-of-law rule would an Arizona court utilize here? The courts of this state appear to have paid the question scant attention. Nevertheless, there is one memorandum decision from the Arizona Court of Appeals that is somewhat on point. In determining what substantive law to apply to an alter-ego dispute concerning a Delaware corporation, the court noted that it would not employ the law of the state of incorporation but would instead apply Arizona law under the Restatement (Second) of Conflicts. *U.S. Bank Nat'l Ass'n v. Starr Pass Resort Devs. LLC*, No. 2 CA-CV 2018-0030, 2019 WL 2237471, at *14 n.17 (Ariz. Ct. App. May 22, 2019). The court wrote that "it is appropriate to apply local state law where the matter does not affect the internal corporate structure and the corporations have little contact with the state of incorporation." *Id.* Here, the pending motion does not concern internal corporate structure and no party appears to have any material connection to Montana. Therefore, the Court will apply Arizona law.

In Arizona, "[a] corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient evidence that 1) the corporation is the 'alter ego or business conduit of a person,' and 2) disregarding the corporation's separate legal status is 'necessary to prevent injustice or fraud.'" *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214 ¶ 30 (Ct. App. 2010) (quoting *Dietel v. Day*, 16 Ariz. App. 206, 208 (1972) and

*State v. Angelo*, 166 Ariz. 24, 27 (Ct. App. 1990)). The Court examines each prong of the veil-piercing analysis in turn.

### A.     Alter Ego Status

"The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel*, 16 Ariz. App. at 208. The Arizona judiciary has recognized numerous non-exhaustive factors that are relevant to the alter-ego analysis, but some of these factors are only pertinent to situations in which an entity is alleged to be another entity's alter ego, such as "common officers or directors" and "similarity of corporate logos." *See Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 160 (Ct. App. 1994). Among the factors most germane to a case in which an LLC is said to be the alter ego of its members are the commingling of personal and corporate funds and the failure to maintain corporate records or observe other formalities of separate corporate existence. *See Barbano v. Brown*, No. 1 CA-CV 23-0091, 2023 WL 6896980, at *2 ¶ 11 (Ariz. Ct. App. Oct. 19, 2023).

The Flings argue that the FAC's allegations of alter-ego status are fatally conclusory. Although the Court agrees that some of Plaintiff's allegations are mere boilerplate paraphrases of the alter-ego factors and thus lend no support to his claim, the Court disagrees with the Flings' overall argument. Even after the FAC's conclusory statements are eliminated from the analysis, the allegations that remain are sufficient to nudge Plaintiff's claim over the line of plausibility.

The FAC substantiates its invocation of alter-ego liability by stating that "[u]pon information and belief, the Flings paid for operational expenses of the RV with their personal assets" and that "[u]pon information and belief, the Flings used the RV for personal, family, or household purposes." (FAC ¶¶ 80, 85.) Those are not proper allegations; they are legal conclusions masquerading as assertions of fact. Both of those statements are simply semantic alternatives to writing that the Flings commingled their personal and corporate assets, which is of course one of the legal elements of any alter-ego claim. Plaintiff offers no description of how the Flings used the RV for personal purposes

or what RV expenses the Flings personally paid for. Similarly, the FAC avers that "[u]pon information and belief, the Flings did not organize FEP to realize profits from the operation of FEP" and that "[u]pon information and belief, the Flings used the RV as their personal recreational vehicle rather than an asset of FEP with proper accounting." (FAC ¶¶ 93, 96.) These statements, too, are simply the elements of alter-ego liability reformulated so that the Flings are the grammatical subjects of the sentences. Although they possess the veneer of factual allegations, they do not actually increase the plausibility of alter-ego liability in this case.

The fact that Plaintiff made many of the foregoing allegations upon "information and belief" is a red herring. Although Plaintiff is correct that the Ninth Circuit permits that style of pleading when the underlying facts are within the peculiar knowledge and control of the defendant, allegations pled according to information and belief still cannot be mere conclusory statements. *See Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024) ("We reject Reaper's apparent contention that this court's opinion in *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017), created an exception to federal pleading standards for allegations made on information and belief.").

Nevertheless, Plaintiff alleges two facts that render alter-ego status sufficiently plausible to survive the Fling's motion to dismiss. First, Plaintiff asserts that Mike Fling signed the consignment agreement with PCG in his personal capacity, not in his capacity as a member or manager of FEP. (FAC ¶ 86.) The consignment agreement, which is attached to the FAC as an exhibit, contains two full lines on which the consignor could print its name, but Mike Fling simply wrote his personal name on one of the lines and left the other line blank. (FAC Ex. N.) The Flings do not address this allegation in their motion. Second, the Flings asserted in a pleading in a separate lawsuit against PCG that they owned the RV in their personal capacities. (FAC ¶ 87.) The Flings argue that that statement is of no consequence because they later filed an amended complaint asserting that FEP owned the RV. In support of that argument, the Flings cite to a case in which the Ninth Circuit noted that "[f]actual assertions in pleadings and pretrial orders, *unless amended*, are

- 9 -

considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) (emphasis added). That case is unavailing to the Flings, however, because Plaintiff does not assert that the Flings' prior statement is a conclusively binding judicial admission. Rather, Plaintiff submits the Flings' prior assertion simply as a fact supporting the plausibility of alter-ego status. Neither the Flings' prior averment nor Mike Fling's signature on the consignment agreement conclusively establishes alter-ego liability. Those two facts merely create *prima facie* plausibility of alter-ego status such that Plaintiff should not be precluded from moving forward with his claim. Although these two facts are inconclusive and could be the result of simple carelessness on the part of the Flings, they evince a failure to observe corporate formalities to a degree sufficient to withstand the instant motion to dismiss.

### B.   Injustice or Fraud

The Arizona test for alter-ego liability is conjunctive. Therefore, in order to proceed on his claim against the Flings, Plaintiff must show that FEP is the Flings' alter ego *and* that continued observance of the corporate form would work an injustice or fraud. *See Loiselle*, 224 Ariz. at 214 ¶ 30. One of the means by which a plaintiff may establish the injustice prong of Arizona's alter-ego test is by demonstrating that an entity was formed with "obviously inadequate capital." *Norris Chem. Co. v. Ingram*, 139 Ariz. 544, 547–48 (Ct. App. 1984). It is of no consequence that an entity that was adequately capitalized at the time of formation eventually becomes insolvent and unable to pay its debts. *Id.* Rather, a plaintiff must establish that the entity's capitalization was inadequate *ab initio*. *Id.* A second means by which a plaintiff may satisfy the injustice prong of Arizona's alter-ego test is by "presenting evidence that the corporation was 'formed for the purpose of perpetrating a fraud or other illegal act.'" *Barbano*, 2023 WL 6896980, at *2 ¶ 12 (quoting *Butler v. Am. Asphalt & Contracting Co.*, 25 Ariz. App. 26, 30 (1975)).

Plaintiff's primary argument is that FEP was undercapitalized at the time of formation because its sole asset was the RV.[2] (FAC ¶¶ 81–83.) Plaintiff contends that

---

[2] The Court rejects Plaintiff's secondary injustice argument, namely that piercing the corporate veil is appropriate in this case because FEP was formed to perpetrate the

- 10 -

FEP's lack of assets beyond the RV renders FEP undercapitalized because "FEP will be unable to pay any judgment for attorneys' fees and costs." (Response at 14.) The cases cited by Plaintiff hold that an entity is undercapitalized when it lacks a sufficient basis to carry on its business. For instance, the Arizona Court of Appeals wrote in *Norris Chemical* that a corporation is undercapitalized if it "carries on a business without substantial capital in such a way that the corporation is likely to have insufficient assets available to meet its debts," "attempt[s] to do corporate business without providing any sufficient basis of financial responsibilities to creditors," and lacks "unencumbered capital reasonably adequate for its prospective liabilities." 139 Ariz. at 547 (citation omitted). "If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is ground for denying the separate entity privilege." *Id.* (citation omitted). The common thread of the cases discussing undercapitalization is that, to be deemed undercapitalized, an entity must lack the capital appropriate for that entity's particular business purpose. Plaintiff's legal theory is that an LLC set up for the purpose of acquiring, registering, consigning, and selling an RV must have some amount of capital beyond the RV itself so that the LLC can discharge debts that it might incur as an incident of its RV transaction. Specifically, Plaintiff argues that an LLC engaging in an RV transaction must possess some capital so that it can pay attorneys' fees in the event that the RV transaction goes south.

Plaintiff does not adequately grapple with the fact that such a proposition would extend to all entities that engage in any kind of business whatsoever. If paying attorneys' fees in a future, as-of-yet nonexistent dispute is a business debt for which entities must be capitalized at the time of formation, then every entity would require such capitalization. Such a requirement might be reflective of sound public policy, but it is not clear whether that requirement is the law in Arizona. Neither Plaintiff nor the Flings cite any cases considering whether entities must be capitalized for the purpose of paying prospective

illegal act of avoiding Oklahoma state taxes. Under the injustice prong of Arizona's alter-ego test, the focus is on whether the entity's existence works an injustice "on the aggrieved party." *See Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 443 (Ct. App. 1978). Plaintiff cites no caselaw indicating that he possesses standing to pierce the corporate veil of an entity that has pursued an illegal course of conduct with respect to some third party wholly unrelated to Plaintiff.

- 11 -

awards of attorneys' fees. The Court has identified only one Arizona case contemplating this issue. In a memorandum decision from 2018, the Court of Appeals entertained, but did not adjudicate, the position espoused by Plaintiff in the instant matter.

> Finally, Appellees' motion sought to join the Buettes on the basis of BDCR being an "insolvent, undercapitalized, sham limited liability company" that is "an alter ego of the Buettes." If required to seek an award of attorney fees and costs from BDCR, Appellees claim they "would be unduly prejudiced." Appellees, however, essentially sought to pierce the corporate veil and hold the Buettes individually responsible for a judgment of attorney fees against BDCR. But the trial court made no findings that BDCR was the alter ego of the Buettes, merely stating "the standards of Rule 17(a) have been met." On this record, we cannot say the court properly joined the Buettes; we therefore vacate the order joining them as parties.

*Buette Derousse Com. Real Est. Properties, LLC v. TRP Twin Peaks, LLC*, No. 2 CA-CV 2018-0033, 2018 WL 6735182, at *8 ¶ 31 (Ariz. Ct. App. Dec. 24, 2018). Thus, the court of appeals neither accepted nor rejected the proposition that an inability to pay attorneys' fees can constitute undercapitalization sufficient to satisfy the injustice prong of Arizona's alter-ego test.

Plaintiff's legal theory strikes the Court as sound. Where an LLC is alleged to have engaged in fraudulent or illegal conduct in connection with a sale, an aggrieved party's ability to vindicate its interest in the transaction would be seriously impeded if the LLC were to possess no capital beyond the object of the sale itself. Given that Arizona is a state where attorneys' fees are available to a prevailing party in an action sounding in contract, an LLC that is set up to engage in contractual transactions in Arizona should not be permitted to evade the imposition of attorneys' fees by undercapitalizing itself prior to engaging in allegedly fraudulent conduct. That state of affairs would allow contractual malefactors to evade one of the primary means by which their victims are able to retain counsel for the vindication of wrongs committed against them. It is difficult to know whether the Arizona judiciary would endorse this view. *Buette Derousse* is not an ideal bellwether, as the issue was not properly preserved for review in that case. Nevertheless, the appellate court seemed to accept that the plaintiff's theory carried at least some merit,

as the court rejected the proposition not based upon intrinsic invalidity but instead based upon an inadequate record. Moreover, the Court of Appeals has previously pronounced that an LLC must be adequately capitalized for its "prospective liabilities," which would seem to include attorneys' fees incurred in litigation related to allegedly fraudulent contractual conduct. *See Norris Chemical*, 139 Ariz. at 547 (citation omitted). The Court finds that it would be inappropriate to reject Plaintiff's legal theory given the lack of any clear indication that the Arizona judiciary would do the same, particularly in light of the Flings' failure to cite probative caselaw.[3] Therefore, the Court holds that Plaintiff has established a *prima facie* showing of undercapitalization sufficient to establish the injustice prong of Arizona's alter-ego test.

## V.     Conclusion

The Flings' motion fails with respect to the FAC, and therefore with respect to the SAC too, as the two pleadings are substantially identical insofar as they relate to alter-ego liability. The Flings may, if they so choose, file a third motion to dismiss directed at the SAC's allegations of direct liability. (*See* SAC ¶¶ 104–09.)

. . .

. . .

. . .

---

[3] The only case cited by the Flings in their rebuttal of Plaintiff's undercapitalization argument is *Ize Nantan Bagowa*, which the Flings cite for the proposition that undercapitalization does not merit piercing the corporate veil in the absence of an injustice suffered by the aggrieved party. (MTD at 8–9.) That proposition misses the point, as Plaintiff contends that his inability to collect on a judgment against FEP constitutes the requisite injustice. The Court is satisfied that an inability to recoup a judgment is sufficient to render a party aggrieved. The more difficult question is whether FEP's lack of capitalization beyond the RV at the time of formation constitutes "undercapitalization" according to the law of Arizona. In *Barbano*, which is similar to the instant case in that it also involved an LLC set up for the purpose of consigning an automobile, the Court of Appeals wrote that "[e]vidence that, at the outset, the Browns established Classic on an unsound financial footing that left the entity unable to meet its anticipated obligations might establish the injustice needed to justify disregarding the corporate form." *Barbano*, 2023 WL 6896980, at *4 ¶ 20. There is no question that an inability to pay attorneys' fees constitutes literal undercapitalization. But, given that legal undercapitalization in Arizona must be assessed at the time of the LLC's formation, the possible sticking point in Plaintiff's legal theory is whether an LLC must possess adequate capital at the time of formation to discharge prospective litigation debts. For the reasons set forth *supra*, the Court holds that it must.

**IT IS THEREFORE ORDERED** denying as moot the Flings' first motion to dismiss (Doc. 9) and denying on the merits the Flings' second motion to dismiss (Doc. 19).

**IT IS FURTHER ORDERED** granting Plaintiff's motion to amend (Doc. 22).

Dated this 24th day of March, 2025.

_____
Honorable John J. Tuchi
United States District Judge